**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0151n.06
Filed: March 17, 2008

**NO. 07-5678**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BENNIE JOE POTEET, II;<br>EVELYN POTEET, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | APPEAL FROM THE DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| POLK COUNTY, TENNESSEE, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE: DAUGHTREY and SUTTON, Circuit Judges; and POLSTER, District Judge.**[*]

**Dan Aaron Polster, District Judge.**

## I. INTRODUCTION

This appeal is but one part of a much larger case in which Plaintiff Bennie Poteet entered the Polk County, Tennessee jail on a charge of driving under the influence of alcohol, but emerged from the Cleveland Community Hospital several days later having suffered a stroke that left him permanently paralyzed.[1] The underlying factual background in this case takes second chair to the facts surrounding discovery, missed deadlines, and the district court's rulings on a motion for

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

[1]While in the county jail, Poteet allegedly suffered unnecessary force and other constitutional violations at the hands of his custodians. These allegations are addressed in federal § 1983 and § 1988 claims that have been fully settled and are **not** the subject of the instant appeal.

partial summary judgment, a motion for extension of time to respond to that motion, and a motion to amend, reconsider, or set aside the grant of partial summary judgment in CCH's favor.

## II.  BACKGROUND

### A.  Factual Background

The underlying facts are, in summation, that Poteet suffered a seizure while still in the jail, at which point he was transferred to Defendant Cleveland Community Hospital ("CCH"), also located in Polk County, Tennessee.  Poteet, as part of his larger suit alleging federal claims against other defendants, also alleged that he suffered permanent injuries due to his inadequate treatment at CCH.  Poteet brought claims for medical malpractice against Dr. Adam Fall,[2] and for negligence, on a few different theories, against CCH.  The instant appeal involves some of these allegations of medical malpractice and negligence arising under Tennessee law.

### B.  Procedural Background

On February 12, 2007, pursuant to a deadline established in the scheduling order, CCH moved for partial summary judgment on some – but not all[3] – of the state law medical malpractice and negligence claims.  In accordance with Tennessee law governing medical malpractice claims, CCH supported its motion for partial summary judgment with affidavits from two expert witnesses, Dawn Haynes, R.N., and John Hyde, Ph.D.  CCH's counsel did not, as he conceded at oral arguments, comply with Federal Rule of Civil Procedure 56(e) by attaching sworn copies of the documents Haynes and Hyde reviewed and cited in their respective affidavits.

---

[2]Poteet was under Dr. Fall's care while he was at CCH.

[3]CCH did not move for summary judgment on the claim that CCH is vicariously liable for the negligence of its employee, Dr. Fall.

On March 5, 2007, the deadline for filing the response brief, Poteet filed the following three documents: (1) a Rule 56(f) motion for an extension of time to respond, in which Poteet explained that he needed additional time for discovery to be able to more fully respond to CCH's motion for partial summary judgment; (2) his brief in response to CCH's motion for partial summary judgment, supported by excerpts of deposition testimony from Dr. Salzman (Poteet's expert witness), Dr. Fall, and Dr. Sharon Farber,[4] as well as Dr. Salzman's affidavit which was previously filed in opposition to Dr. Fall's motion for summary judgment; and (3) a motion to strike the Haynes and Hyde affidavits as insufficient under Rule 56(e).

On the same day, CCH's counsel agreed to make a Rule 30(b)(6) corporate representative available for deposition on March 7, 2007 – two days after Poteet's responsive deadline. Poteet deposed CCH's Rule 30(b)(6) representative, Susan Lewis, on March 7, 2007. Although the district court denied Poteet's Rule 56(f) motion on March 8, 2007, additional discovery was taken by agreement of counsel (and submitted) after the March 5 deadline and the court's March 8 order.

On March 9, 2007, Poteet filed a motion to alter or amend the court's denial of the Rule 56(f) motion. The court denied the motion in an order dated March 14, 2007. Also on March 14, CCH manually filed supplemental affidavits from Haynes and Hyde that were in compliance with Rule 56(e), by virtue of having attached certified copies of the documents Haynes and Hyde consulted and referenced in their affidavits. These affidavits purportedly replaced or amended the affidavits filed on the February 12, 2007 dispositive motions deadline. For his part, Poteet filed what

_____

[4]Dr. Farber is a Chattanooga, Tennessee-based neurologist who examined Poteet during his hospitalization at CCH.

3

we will term his "after-acquired evidence" on March 13, 2007, March 22, 2007, and April 5, 2007. Poteet also deposed CCH's expert witnesses at some point after March 5.[5]

On April 11, 2007, the district court denied Poteet's motion to strike, and granted CCH's motion for partial summary judgment. In doing so, the district court purported to rely only on the evidence contained in the record as of the March 5, 2007 response deadline, although the court also considered the later-filed (i.e. procedurally sufficient) Haynes and Hyde affidavits. The district court refused to consider any of Poteet's after-acquired evidence; in a lengthy footnote at the start of its order granting partial summary judgment, the court asserted that it would "not consider any briefs or evidence filed after the applicable deadline, March 5, 2007." (J.A. at 79.)

Poteet soon thereafter filed a motion under Rule 59(e) or Rule 60(b) to reconsider, alter, or amend the order granting partial summary judgment, along with a 25-page brief in support. The district court denied the motion in an order dated April 26, 2007. On the same day, the district court entered an order declining to exercise discretionary supplemental jurisdiction over the "remaining state law claims," and dismissing those claims without prejudice. (See J.A. at 115.)

The court's order denying Poteet's Rule 59(e)/Rule 60(b) motion contains the following footnote: "Plaintiff also notes the parties have recently settled all federal claims, and only state law claims remain for trial. Plaintiff argues that if the Court chooses not to exercise its discretionary supplemental jurisdiction over the remaining state law claims, it should vacate its previous order [granting partial summary judgment]. *This argument has no merit as the state court may reconsider any rulings of this Court.*" (J.A. at 111 (emphasis added).)

_____

[5]From what we can gather, Poteet deposed Nurse Haynes on April 10, 2007. (See J.A. at 350.) It is unclear exactly when Poteet deposed Dr. Hyde, though logic dictates that the Hyde deposition took place after March 7, 2007.

Poteet timely appealed, arguing that the district court erred by denying his Rule 56(f) motion, by granting partial summary judgment, and by denying his Rule 59(e)/Rule 60(b) motion.

## III. ANALYSIS

Most of the parties' briefs focus on the district court's decision not to consider Poteet's after-acquired evidence. We learned at oral argument, however, that all of the state law claims originally alleged in the instant case have been refiled in Tennessee state court. According to counsel, the case is going forward to trial in approximately two months. We also learned that the state court judge rejected CCH's argument that the district court's partial summary judgment decision should have collateral estoppel effect, and consequently the trial will include all of Poteet's claims against CCH.

It seems likely that the state court judge correctly interpreted the district judge's April 26, 2007 order. It also seems likely that by stating "the state court may reconsider any rulings of this Court," the district court meant to vacate its prior orders and send all of Poteet's state claims to state court, not just the claims against Dr. Fall and against CCH for vicarious negligence. Out of deference to the district court, however, we are remanding the case. If we are correct in our assumption, then the district court should do explicitly what we believe it did tacitly, and vacate its previous order granting CCH's motion for partial summary judgment.

## IV. CONCLUSION

For the reasons stated above, we hereby **REMAND** this case to the district court.